Odel COMEAUX, Plaintiff-Appellee,

v.

SOUTHERN PACIFIC TRANSPORTATION CO., Defendant-Third Party Plaintiff-Appellant,

Elmo Laborde, M. D., Third Party Defendant-Appellee.

No. 77–2906.

United States Court of Appeals, Fifth Circuit.

Jan. 10, 1980.

---

Harry McCall, Jr., New Orleans, La., for defendant-third party plaintiff-appellant.

H. Martin Hunley, Jr., David S. Kelly, Henry B. Alsobrook, Jr., New Orleans, La., J. Weldon Granger, Bellaire, Tex., Michael D. Cucullu, New Orleans, La., for Laborde.

Before GODBOLD, HILL and POLITZ, Circuit Judges.

JAMES C. HILL, Circuit Judge:

Appellee Odel Comeaux sustained an injury to his left arm when he was forced to jump from a railroad car on which he was working. Comeaux was taken to a hospital and was treated by Dr. Elmo J. Laborde who diagnosed the injury as a fracture of the ulna radial head and a dislocation of the left elbow. The dislocation was reduced and a cast applied to the arm. A few days later surgery was performed to remove bone chips. Sometime in the next few months the elbow redislocated. The redislocation was never detected by Laborde. By the time the problem was discovered by another physician, it was too late to remedy. As a result, Comeaux's elbow had to be fused into position.

Comeaux filed suit in federal court against his employer, Southern Pacific, under the Federal Employers' Liability Act, 45 U.S.C. § 51 et seq. Prior to trial, Southern Pacific filed a third-party complaint against Dr. Laborde, seeking indemnification or contribution. During the trial, the district court, on motion of Dr. Laborde, dismissed the third-party complaint on the grounds that, under Louisiana law, Southern Pacific had no right to either indemnification or contribution from Dr. Laborde. The case against Southern Pacific was submitted to the jury on special interrogatories. A verdict was rendered in favor of Comeaux and damages assessed in the amount of $275,000.

Southern Pacific now complains that it was held liable for damages attributable to the alleged negligence of Dr. Laborde, and that the district court should not have dismissed the third-party complaint. We affirm.

With respect to Southern Pacific's first argument, we are directed to an interrogatory in which the jury was asked to decide "[w]hat amount . . . will fairly and adequately compensate the plaintiff

for the injuries sustained by him which were proximately caused by the negligence of the defendant, Southern Pacific Transportation Company." Record, App. Vol. 1–2, at 557. At the trial, counsel for Southern Pacific requested and was refused an additional interrogatory asking the jury to determine the amount of damage proximately caused by Dr. Laborde's treatment. Southern Pacific feels that the trial judge failed to make it clear to the jury that they were not to award damages against Southern Pacific for any aggravation of Comeaux's injury caused by Dr. Laborde. A review of the instructions given in connection with the interrogatory convinces us that this argument is without merit. In a very detailed and clear manner, the court explained to the jury that Southern Pacific was not to be held responsible for the redislocation of Comeaux's elbow if it found that the redislocation resulted from Dr. Laborde's failure to exercise the skill ordinarily employed by members of the profession in good standing in his community.[1] In light of the unambiguous instructions given

1. The district court instructed the jury as follows:

Now, you are not to award damages for any injury or condition from which the plaintiff may have suffered or may be suffering unless it has been established by a preponderance of the evidence in the case that such injury or condition was proximately caused by the accident in question.

Injury or damage is proximately caused by an accident if it is either directly resulting from or is a reasonably probable consequence of the accident.

If you reach the question of damages, you will bear in mind that the plaintiff, of course, contends that all of the damages for which he seeks to recover are proximately caused by the negligence of the railroad, and his accident and injury caused thereby. On the other hand, the defendant contends that either the plaintiff himself dislocated his elbow or it slipped out of its reduced position while in its plaster cast or during the time that plaintiff was undergoing physical therapy, and Dr. Laborde's failure to x-ray the elbow properly and take corrective action was an intervening, superceding cause of the injury for which Southern Pacific cannot be held liable, and if Southern Pacific is held liable for plaintiff's accident and injury, any award of damages to the plaintiff should be limited to the normal period of recovery, estimated at about six months to one year and should not include damages for further complications and treatment of the elbow resulting from Dr. Laborde's failure to properly recognize and treat the redislocation of the plaintiff's elbow.

Now, should you find that the defendant railroad was negligent and that its negligence was a cause of the plaintiff's accident, in your determination of the damages which you should award the plaintiff, you will then consider the railroad's contention that it is not liable for any damages not proximately resulting from the original injury and first dislocation of the elbow, specifically that it is not liable for any additional damage, loss, injury or disability, if any, which may have resulted from the second dislocation which the railroad contends was not caused by its negligence or that of its employees, but rather by the negligence of Dr. Laborde in his treatment and care of the plaintiff following the operation of February 28, 1974.

The law recognizes that however remarkable the advances made by medical science there remains much to be learned. Members of the medical profession cannot be held responsible for circumstances beyond their knowledge and ability as humans to anticipate and prevent.

Accordingly, the law wisely requires only that they possess and use that degree of knowledge, ability and skill as is possessed and used by their colleagues. The result is, therefore, that it is a doctor's duty to exercise the degree of skill ordinarily employed under similar circumstances by members of his profession, in good standing, in the same community or locality, and to use reasonable care and diligence along with his best judgment in the application of the skill to the case.

Because of that rule, the standard by which you determine negligence with regard to a doctor is different from the standards of negligence applicable to an ordinary person.

The law of Louisiana does not require a physician to exercise the highest degree of care or skill possible in treating a patient, nor does it impute negligence to the physician who fails to follow that course of treatment which at a later date may be proved to be the wiser course.

Whether he has complied with that degree of care required in treating a patient is measured by the skill ordinarily employed by members of his profession, in good standing, in his community in treating the same complaint or injury.

Thus, if you should find from a preponderance of the evidence that in treating and caring for the plaintiff after he performed the February 28, 1974 operation Dr. Laborde failed to follow or deviated from such standard of care as you may find it to have been proven by a preponderance of the evidence, then you would find that Dr. Laborde acted

the jury, an additional interrogatory simply was unnecessary.[2] We also take this opportunity to point out that Southern Pacific probably got a more favorable instruction than it was entitled to, since the general rule is that the original tortfeasor is responsible for any added injury caused by the malpractice of a treating physician. W. Prosser, Law of Torts § 44, at 278–79 (4th ed. 1971). Because Comeaux appears content with his verdict and has not raised any objection to the instructions, it is unnecessary for us to give the question further attention.

Our conclusion that no part of the $275,-000 could have represented damages attributable to Dr. Laborde's treatment renders moot the question whether Southern Pacific's third-party complaint property was dismissed. Since Southern Pacific was held responsible only for its own negligence, it has no claim to pursue against Dr. Laborde for indemnification or contribution.

AFFIRMED.

negligently in such treatment and care given the plaintiff after such operation, but this would not authorize you to withhold recovery from the plaintiff against the railroad for any additional damages as you may find was suffered by the plaintiff after the second dislocation, unless it also appears from a preponderance of the evidence that such damages were the proximate result of such negligence on the part of Dr. Laborde rather than the proximate result of the original accident and injury.

On the other hand, if you should find from a preponderance of the evidence that the standard of care prevalent at the time in Lafayette was not established, or if you find that it was established that Dr. Laborde treated the plaintiff in accordance with such standard of care, then you would not find Dr. Laborde negligent and you would allow recovery by plaintiff against the defendant railroad for such damages as you may find were proximately caused by the negligence of the defendant railroad, including those arising from the original as well as the second dislocation.

A doctor who exercises skill and care required in treating and caring for a patient, as measured by the skill ordinarily employed by members of his profession in good standing in the community in which he practices, cannot be found negligent because unfavorable or unsuccessful results may follow the exercise by him of reasonable care and skill and judgment in his treatment of the patient. Record, App. Vol. 2–2, at 1082–86.

2. We note also that in his closing argument counsel for Southern spent a good deal of time explaining to the jury that Southern Pacific was to be held liable only for its own negligence and not that of Dr. Laborde. Record, App. Vol. 2–2, at 1044–52. No objection to these comments was made by Comeaux's attorney.